WINKLER v. BALLARD et al.

No. 657.

Municipal Court of Appeals for the District of Columbia.

Dec. 22, 1948.

The first assignment of error is that no specific findings of fact were made in the Administrator's office.

After petitioner's evidence had been presented to the rent examiner, the examiner made findings and a recommended order. Such findings were restricted to determinations of the rent for each apartment prior to the request for an increase, an outline of the services supplied by the landlord, and two specific findings having to do with the present controversy. The first was phrased as follows: "That the maintenance and operating expenses borne by the landlord, including taxes and water rent, have increased substantially and form a proper basis for adjustment of the maximum rent ceiling to compensate therefor to the extent recommended herein." The other was to the effect that "the recommended maximum rent ceiling does not exceed the generally prevailing rate for comparable housing accommodations."

Thereafter the petitioner filed a motion for further findings of fact upon the ground that whereas the examiner had allowed an increase in the maximum rent ceilings of approximately 8%, petitioner was unable from the record to determine the basis of such conclusion or to determine in what respects the figures submitted by petitioner had not been approved. This application for further findings was refused.

Thereupon the petitioner filed with the Administrator an application for review by him as provided for in the act stating again that petitioner was unable to determine the basis for the disallowance of the claim in full.

The Administrator thereupon did review the examiner's findings and the evidence and issued a two-paragraph order affirming the findings and order of the examiner. The Administrator's order, like that of the examiner, gave no indication of the basis for the result arrived at.

The petition for review was then filed in this court upon the twofold ground that neither the examiner nor the Administrator had made sufficiently specific findings of fact and that the orders of the examiner and of the Administrator were contrary to the evidence.

Scott P. Crampton, or Washington, D. C., for petitioner.

No appearance for respondents.

Ernest F. Williams, of Washington, D. C., (Ruffin A. Brantley, of Washington, D. C., on the brief), for Robert F. Cogswell, Administrator of Rent Control.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This is a petition for review of an order of the Administrator of Rent Control. Petitioner is the managing agent of the apartment building known as the Winthrop House. Although the tenants of the building are named as respondents, 124 of them waived a hearing and consented to the requested rent increase, and the remaining tenants made no objection and introduced no evidence. The Administrator, as amicus curiae, appears in defense of his order.

The order in question was entered as a result of a petition for increase in maximum rent ceilings because of a substantial rise, since January 1, 1941, in taxes and other maintenance and operating costs and expenses. The petition sought an increase of 10%. The Administrator allowed an increase of approximately 8%.

In the brief of the Administrator, the basis of the allowance made by the examiner and approved by the Administrator was stated for the first time. In this brief the Administrator not only stated the formula used by him but gave reasons for not following the formula urged by petitioner.

We are unable to convince ourselves that the procedure followed in this case is in accordance with due process of law as prescribed by the District of Columbia Emergency Rent Act. In Section 8(c) of the Act, Code 1940, Supp. VI, 45—1608(c), it is provided that the examiner after hearing shall make findings of fact and recommend an appropriate order. It is further provided that, if so requested, the Administrator may review the proceedings and grant a hearing and "shall state his findings of fact or affirm the examiner's findings of fact which findings in either case shall be conclusive if supported by substantial evidence, and shall make an appropriate order."

We appreciate fully that the office of the Administrator of Rent Control is a temporary one, that the Administrator has at his disposal a very small staff and that at the present time he is faced with a very large number of applications for rent increases. We believe, however, that these circumstances are not sufficient to justify the procedure followed in the present case. We believe that landlords and tenants alike are entitled to know the basis upon which applications are granted in whole or in part or refused. We believe it too late when such basis is stated for the first time in a brief filed in the reviewing court. Here the brief of the Administrator shows the basis of the action recommended by the examiner and taken by the Administrator, and we see no reason why such basis should not have been contained in the findings of the examiner so that petitioner might have had an opportunity, before the Administrator, of criticizing that basis. We believe the same rule applies to any other basis used by the examiner, namely, that findings should state the basis in sufficient detail so that both parties may, if they desire, object and seek to persuade the Administrator to change the basis. In the absence of such procedure the filing of objections with the Administrator, authorized by the statute, becomes a mere formality.

It is urged, however, that since the basis of the Administrator's order and the reasons therefor are disclosed in the brief filed here in his behalf nothing would be gained by remanding the case to the Administrator for further consideration. There are two answers to this contention. The first is that a brief signed by counsel is a totally different thing from a finding signed by the Administrator. The second is that an order of this type does not lend itself to modification. Ordinarily we would only affirm or reverse. The Administrator, however, once he is informed of the detailed objections of a petitioner, made after the petitioner knows the basis of a proposed order, may make different findings and may modify his order.

The remaining error assigned by petitioner goes to the merits of the order.

The section of the Act, Code 1940, Supp. VI, 45—1604(b), under which the application for increased rents was filed provides as follows: "Any landlord may petition the Administrator to adjust the maximum-rent ceiling * * *, applicable to his housing accommodations to compensate for (1) a substantial rise, since January 1, 1941, in taxes or other maintenance or operating costs or expenses * * *; whereupon the Administrator may by order adjust such maximum-rent ceiling * * * in such manner or amount as he deems proper to compensate therefor, in whole or in part, if he finds such adjustment necessary or appropriate to carry out the purposes of this chapter: *Provided*, That no such adjusted maximum-rent ceiling * * * shall permit the receipt of rent in excess of the rent generally prevailing for comparable housing accommodations as determined by the Administrator."

The "purposes" of the Act referred to in the foregoing section are described in Section 1 as being "to prevent undue rent increases and any other practices relating to housing accommodations in the District of

Columbia which may tend to increase the cost of living or otherwise impede the national-defense program." Code 1940, Supp. VI, 45—1601(a).

Although the Rent Act has been in effect since December 2, 1941, this and two other cases (Proctor v. Miller, D.C.Mun.App., 63 A.2d 665, Hall v. Ring Management Company, D.C.Mun.App., 63 A.2d 656) are the first appeals reaching this court in which are involved the methods of calculation or formulas used by the Administrator in passing upon petitions for rent increases. Each of these cases involves housing accommodations built just before or shortly after the test date set by the Act—January 1, 1941.

The method urged by the petitioner in the present case was to show that in 1942 the operating expenses of the apartment house represented 35.10% of rents, whereas in 1947 the operating expenses were 46.64% of rents, or an increase of 11.54% in the relationship between expenses to rents in 1942 and 1947. Petitioner, however, only requested an increase of 10% to be applied on a percentage basis to the rent on each apartment.

The Administrator, however, (according to the Administrator's brief) averaged all operating expenses (without taxes and water rents) for the years 1943-47, inclusive, added to the resulting figure the increase in real estate taxes made during 1947, deducted the expenses for 1942, and compared the resulting figure with an adjusted rental figure and arrive at an allowable rent increase of 7.87%. Actually an 8.4% increase was given. The Administrator's counsel stated in his brief that the additional amount "should take care of the increased water rent."

In Hall v. Ring Management Company, the tenants have urged the use by the Administrator of the same formula adopted in the present case, but instead the Administrator in that case followed the formula which petitioner here urges but which the Administrator rejected.

In the brief filed by the Administrator's counsel in the present case, he makes the following statement: "It should be further noted that here is a case where a large majority of the tenants agreed to a 10% increase and the Administrator was satisfied that the building had been properly maintained throughout the years and there was no desire on his part to simply hold down the rents for any reason other than the mathematical result of his computation as verified by the accountant. *It would appear illogical and unfair to use one method of computation for one case and another method of computation for another case* and it is submitted that it is just as improper to agree with the petitioner's method of computing the increase in rents based on operating costs, maintenance and taxes." (Emphasis supplied.)

Yet in the three cases before us the Administrator has used one method of computation in two cases and another method in the third case with no explanation from him as to the reasons or basis for the apparently contradictory conclusions.

In the brief for the Administrator the expense figures are analyzed in detail in justification for the use of the average basis. Petitioner urges that if some of the figures are believed to be unrepresentative, those figures should be adjusted by the Administrator in order to arrive at a correct result but that the mere averaging of all expense items over a period of years is not the proper way of making estimates for the future. In other words petitioner concedes that the Act does not require a rigid adherence to a comparison of the expenses for the first and last years of operation.

■ We do not believe we should choose between the two different methods of computation used by different examiners in different cases, particularly where the facts seem to be generally similar and where both have received the endorsement of the Administrator. We believe the Administrator himself should determine anew the principles to be followed, having in mind the objections presented to us which he now has the opportunity for the first time to consider.

■ Our colleague in dissenting and urging affirmance of the Administrator's order takes the position that we avoid the issue of whether the Administrator has the

power to make only partial compensation for increased expenses. He also urges that we decide in this case what constitutes full compensation and how it is to be computed. We have given earnest consideration to this view but have been unable to agree with it. To us it seems clear that no such issue is presented by the present case or by any other case now before us. This is true because in each of these cases the Administrator asserts that he has made compensation in full. Therefore whether under the statute he may make compensation only in part is entirely academic as far as this and the other pending cases are concerned. Neither do we think that the court is authorized by the Act to state what constitutes full compensation and how it is to be computed. That, we believe, is a function specifically entrusted by the statute to the Administrator. We can decide only actual cases. We reiterate, therefore, that the reasons we believe this order of the Administrator must be reversed are, first, that procedural due process was not followed and, second, because we do not believe that the Administrator is entitled to adopt different fundamental bases in passing upon different requests for rent increases in cases where the fundamental facts are approximately the same.

For the reasons stated, the order of the Administrator is reversed and the case remanded for further action in accordance with this opinion.

HOOD, Associate Judge (dissenting).

I think the court avoids deciding an issue which is basic in this appeal. The petitioner makes the assertion that under section 4(b) of the Act, quoted in the court's opinion, he is entitled to receive "full compensation for increased expenses" unless the receipt of such would place the rents above those generally prevailing for comparable housing accommodations. The Administrator takes issue with this and says he is authorized to compensate "in whole or in part" for increased operating costs. Yet the court says this issue is not before it and refuses to decide it. I think it is incumbent on the court to decide whether petitioner is entitled to full compensation and, if so,

what constitutes full compensation and how it is to be computed.

By the express wording of section 4(b) the Administrator upon proof of a substantial rise in operating costs "may by order adjust such maximum-rent ceiling * * * in such manner or amount as he deems proper to compensate therefor, in whole or in part, if he finds such adjustment necessary or appropriate to carry out the purposes of this Act." To me it seems plain that the Administrator is not required to give full compensation but has broad discretion in making adjustments. He has a greater duty than merely determining increased costs and computing therefrom increased rent. He has a duty to adjust in an amount compensating only in part if he finds that partial compensation is necessary or appropriate to carry out the purposes of the Act. It follows that a landlord is not of right entitled to demand full compensation.

The discretion of the Administrator in making adjustments is, of course, not unlimited. His action must be the result of informed judgment; the increase in rent must bear a reasonable relation to the increase in costs; and his action must not be capricious or arbitrary. The burden is on petitioner to show an abuse of discretion and a showing, as claimed here, of increased costs in excess of 10% and an allowance of increase in rents of 8% does not sustain that burden.

If the foregoing is correct, it seems to me to follow that the court is in error in holding there was a lack of due process in the proceeding because the Administrator failed to disclose the process by which he reached the allowed increase. The Administrator rejected none of petitioner's evidence. From it he found that petitioner had sustained a substantial rise in costs justifying an upward adjustment in rents. The extent of such adjustment was in his discretion and in my opinion he was not required to state the process by which in the exercise of his discretion he arrived at the allowed increase.

The court says the parties are entitled to know the basis upon which an application is granted in whole or in part or refused.

What does this mean? The basis of any order of adjustment is of course the evidence in the case. In this case petitioner alone offered evidence and none of it was rejected. So the statement of the court as applied to this case apparently means that the Administrator should have informed petitioner why the increase allowed did not coincide exactly with the increase asked. Yet the court refuses to say whether the petitioner is entitled to an increase equal to the increase proved, or whether the increase allowed is within the Administrator's discretion. There is a vast difference in the rights of the parties, the duties of the Administrator, and the procedure to be followed, depending upon whether the Administrator must determine the increase in costs with accounting accuracy and must from that determination grant an increase in rents equal thereto, or whether the Administrator upon proof of a substantial rise in costs may make such adjustment to compensate therefor in whole or in part as he finds necessary or appropriate to carry out the purposes of the Act.

As I understand the court's opinion, it does not hold that the method of computation used by the Administrator in this case was erroneous, but it nevertheless orders the Administrator to "determine anew the principles to be followed." Does this mean that the method used was wrong and that a different one must be used? If this is the effect of the decision then I think the court should point out the defects in the method used and should state the principles to be followed. The court holds that the Administrator cannot adopt different "fundamental bases" in cases where the "fundamental facts" are approximately the same. But unless there was error in the fundamental basis in this case I see no reason for reversing it because some other basis was used in some other case, and the court points out no such error.

In my opinion the record discloses that there was no error in receipt or rejection of evidence by the Administrator; that the evidence justified the finding of a substantial rise in petitioner's operating costs; that the allowed increase in rents bears a reasonable relation to the increase in costs; and that the extent of the increase in rents was within the Administrator's discretion. Accordingly, I would affirm the Administrator's order.

In conclusion, I think that underlying the court's opinion is a failure to recognize that the Rent Act is an emergency law of a temporary nature. The office of the Administrator is not a permanent rate-making agency. Many rules applicable to the latter class of agency have no application here. The broad discretion given the Administrator does not and probably could not exist in the permanent agencies. "A limit in time, to tide over a passing trouble, well may justify a law that could not be upheld as a permanent change." Block v. Hirsh, 256 U.S. 135, 157, 41 S.Ct. 458, 460, 65 L. Ed. 865, 16 A.L.R. 165. Our Act, like the National Act, 50 U.S.C.A.Appendix, § 1881 et seq., is not a permanent substitute for the normal operation of competitive forces but is a bridge over a period of emergency. Wilson v. Brown, Em.App., 137 F.2d 348.